UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| SIDNEY D. W.[1], <br><br>          Plaintiff, <br><br> vs. <br><br> KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY, <br><br>          Defendant. | 5:21-CV-05074-DW <br><br><br> REDACTED ORDER |

## INTRODUCTION

Sidney D. W. filed a complaint appealing the final decision of Kilolo Kijakazi, the acting Commissioner of the Social Security Administration, denying disability insurance benefits. (Doc. 1). Defendant denies claimant is entitled to benefits. (Doc. 5). The court issued a briefing schedule requiring the parties to file a joint statement of materials facts ("JSMF"). (Doc. 8). For the reasons stated below, claimant's motion to reverse the decision of the Commissioner (Doc. 13) is denied and the Commissioner's motion to affirm the decision of the commissioner (Doc. 14) is affirmed.

---

[1] The Administrative Office of the Judiciary suggested the court be more mindful of protecting from public access the private information in Social Security opinions and orders. For that reason, the Western Division of the District of South Dakota will use the first name and last initial of every non-governmental person mentioned in the opinion. This includes the names of non-governmental parties appearing in case captions.

The Court has reviewed the parties' briefs and the entire administrative record, including the transcripts and medical evidence. Based on the following, the Court will affirm the Commissioner's decision.

## FACTS AND PROCEDURAL HISTORY

The parties' JSMF (Doc. 8) is incorporated by reference. Further recitation of the salient facts is incorporated in the discussion section of this order.

On September 11, 2018, Sidney W. filed an application for Social Security disability benefits alleging an onset of disability date of August 30, 2018. (AR 10[2]). The claim was initially denied on December 11, 2018; it was denied upon reconsideration on November 16, 2019. Id. Sidney W. requested an administrative hearing on November 16, 2019, and one was held on November 25, 2020. Id. On February 17, 2021, the Administrative Law Judge ("ALJ") issued a written decision denying benefits. Id. at pp. 7-22. Sidney W. subsequently sought appellate review; her request was denied, making the decision of the ALJ final. Id. at p. 1. It is from this decision that Sidney W. timely appeals.

## STANDARD OF REVIEW

The issue before this court is whether the ALJ's decision of February 17, 2021, that Sidney W. was not "under a disability, as defined in the Social Security Act, from August 30, 2018, through [February 17, 2021]," is

---

[2] The court will cite to information in the administrative record as "AR at p. ___."

supported by substantial evidence on the record as a whole.  42 U.S.C. § 405(g); Choate v. Barnhart, 457 F.3d 865, 869 (8th Cir. 2006).  "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Cox v. Barnhart, 471 F.3d 902, 906 (8th Cir. 2006) (internal citation and quotation marks omitted).

It is not the role of the court to re-weigh the evidence and, even if this court would decide the case differently, it cannot reverse the Commissioner's decision if that decision is supported by good reason and is based on substantial evidence.  Guilliams v. Barnhart, 393 F.3d 798, 901 (8th Cir. 2005).  A reviewing court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (quoting Shannon v. Chater, 54 F.3d 484, 486 (8th Cir. 1995)).  Issues of law are reviewed *de novo* with deference given to the Commissioner's construction of the Social Security Act.  Smith v. Sullivan, 982 F.2d 308, 311 (8th Cir. 1992).

The review of a decision to deny benefits is "more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision . . . [the court must also] take into account whatever in the record fairly detracts from that decision." Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (quoting Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001)).

The Social Security Administration established a five-step sequential evaluation process for determining whether an individual is disabled and entitled to benefits under Title XVI which are:

> **Step One:** Determine whether the applicant is presently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If the applicant is engaged in substantial gainful activity, he is not disabled, and the inquiry ends at this step.
>
> **Step Two:** Determine whether the applicant has an impairment or combination of impairments that are severe, i.e. whether any of the applicant's impairments or combination of impairments significantly limit his physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). If there is no such impairment or combination of impairments the applicant is not disabled, and the inquiry ends at this step. The regulations prescribe a procedure for analyzing mental impairments to determine whether they are severe, which includes completion of a Psychiatric Review Technique Form. Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992); 20 C.F.R. § 1520a.
>
> **Step Three:** Determine whether any of the severe impairments identified in Step Two meets or equals a listing in Appendix 1, Subpart P, Part 404. 20 C.F.R. § 404.1520(d). If an impairment meets or equals a Listing, the applicant will be considered disabled without further inquiry. This is because the regulations recognize the "Listed" impairments are so severe that they prevent a person from pursuing any gainful work. Heckler v. Campbell, 461 U.S. 458, 460 (1983). If the applicant's impairment(s) are severe but do not meet or equal a Listed impairment the ALJ must proceed to step four.
>
> **Step Four:** Determine whether the applicant is capable of performing past relevant work. To make this determination, the ALJ considers the limiting effects of all the applicant's impairments (even those that are not severe) to determine the applicant's residual functional capacity. If

4

the applicant's residual functional capacity ("RFC") allows him to meet the physical and mental demands of his past work, he is not disabled. 20 C.F.R. §§ 404.1520(e); 404.1545(e). If the applicant's RFC does not allow him to meet the physical and mental demands of his past work, the ALJ must proceed to Step Five.

**Step Five:** Determine whether any substantial gainful activity exists in the national economy which the applicant can perform. To make this determination, the ALJ considers the applicant's RFC, along with his age, education, and past work experience. 20 C.F.R. § 1520(f).

20 C.F.R. § 404.1520. The plaintiff bears the burden of proof at steps one through four. Barrett v. Shalala, 38 F.3d 1019, 1024 (8th Cir. 1994); 20 C.F.R. § 404.1512(a). At step five, the burden of proof shifts to the Commissioner, which "is neither statutory nor regulatory, but instead, originates from judicial practices." Brown v. Apfel, 192 F.3d 492, 498 (5th Cir. 1999). "The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five." Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004).

## DISCUSSION

The ALJ applied the five-step evaluation required by the Social Security Administration regulations and found Sidney W. was not disabled. (AR 10-22).

In evaluating step one, the ALJ determined Sidney W. "has not engaged in substantial gainful activity since August 30, 2018, the alleged onset date" of disability. Id. at p. 13.

At step two, the ALJ determined Sidney W. suffered from the following severe impairments: 1) bipolar disorder; 2) obsessive compulsive traits; 3)

5

obesity; and 4) bilateral carpal tunnel syndrome, which significantly limit the ability to perform basic work activities.  Id.  Sidney W. does not challenge this finding.  (Doc. 13).

At step three, the ALJ determined Sidney W. did not have an impairment or combination of impairments which met or were medically equal to one of the impairments listed in Appendix 1.  (AR 13-14).  Sidney W. does not challenge this finding.  (Doc. 13).

In evaluating step four, the ALJ resolved despite Sidney W.'s impairments she had "the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except:

> [she] can lift, carry, push, and pull up to ten pounds frequently and twenty pounds occasionally; stand or walk up to six hours total in an eight hour day; sit up to six hours in an eight hour day; limited to frequent operation of hand controls with the bilateral upper extremities, frequent handling, fingering, and feeling with the bilateral upper extremities; occasionally climb ladders, ropes, and scaffolds; frequently climb ramps or stairs, balance, stoop, kneel, crouch, or crawl; no exposure to unprotected heights, moving mechanical parts, or other workplace hazards; no exposure to extreme cold; limited to low stress work defined as understanding, remembering, and carrying out only simple and routine tasks in a job requiring not more than simple work related decisions; no high production rate or pace work like what is expected on an assembly line but may gill a quota as long as they can control the pace of that work; no jobs requiring tandem tasks or cooperation with co-workers for task completion; capable of accepting instruction and receiving criticism where this interaction with supervisor happens no more than occasionally throughout the work day; limited to a static work environment, meaning less than occasional changes in the work setting and duties (less than occasional defined as not more than once a month could that person tolerate changes in the work setting or duties).

(AR 14-15).

At step five, the ALJ determined Sidney W. is capable of performing past relevant work as a cashier, which is an unskilled, light job, and does not require the performance of work-related activities precluded by the claimant's residual functional capacity. Id. at p. 20. Furthermore, the ALJ found that other jobs exist in significant numbers in the national economy that Sidney W. can perform considering her age, education, work experience, and residual functional capacity. Id. The ALJ relied on a vocational expert's testimony as to Sidney W.'s limitations set forth in the residual functional capacity. Id. at p. 21.

Sidney W. challenges two findings. (Doc. 13). Sidney W. argues her credibility about her psychological symptoms should not have been rejected, and the opinions of treating psychiatrist Dr. Haas should not have been rejected. (Doc. 13, p. 1). The Commissioner argues there is substantial evidence to support the ALJ's RFC. (Doc. 15).

**1.    The ALJ did not err in rejecting Sidney W.'s credibility**

Sidney W. argues the ALJ improperly rejected her credibility about her psychological symptoms. (Doc. 13). She argues there is medical evidence in the record to corroborate her subjective complaints and that she is unable "to perform in the competitive and stressful conditions in which real people work in the real world;" specifically, she argues due to her fluctuating moods, she is unable to deal with changes in a routine work environment. (Doc. 13, pp. 11, 13). The Commissioner argues the ALJ properly considered and discussed Sidney W.'s subjective complaints. (Doc. 15, pp. 8-9).

7

"If an ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so, [the court] will normally defer to that judgment." Hogan v. Apfel, 239 F.3d 958, 962 (8th Cir. 2001); see Dukes v. Barnhart, 436 F.3d 923, 928 (8th Cir. 2006) (where adequately supported, credibility findings are for the ALJ to make). "The ALJ may discount subjective complaints of pain if inconsistencies are apparent in the evidence as a whole." Hogan, 239 F.3d at 962 (quoting Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998)); Van Vickle v. Astrue, 539 F.3d 825, 828 (8th Cir. 2008). But "an ALJ may not discount a claimant's subjective complaints solely because the objective medical evidence does not fully support them." Wiese v. Astrue, 552 F.3d 728, 733 (8th Cir. 2009). The Eighth Circuit has repeatedly "held that acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility." Halverson v. Astrue, 600 F.3d 922, 932 (8th Cir. 2010) (quoting Heino v. Astrue, 578 F.3d 873, 881 (8th Cir. 2009).

The Eighth Circuit set forth factors, called Polaski Factors, that courts should follow when evaluating a claimant's credibility, which include: "the claimant's prior work history; daily activities; duration, frequency, and intensity of pain; dosage, effectiveness and side effects of medication; precipitating and aggravating factors; and functional restrictions" as well as objective medical evidence to support claimant's complaints. Grindley v. Kijakazi, 9 F.4th 622, 630 (8th Cir. 2021) (citing Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984)). The ALJ "need not explicitly discuss each Polaski factor;" but, they must acknowledge and consider those factors. Strongson v.

8

Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004); see Steed, 524 F.3d at 876 (citing Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)).

In this case, the ALJ concluded Sidney W.'s "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Sidney W.'s] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 16).

First, the ALJ considered Sidney W.'s daily activities, relying on Sidney W.'s testimony that she:

> has three children, ages fourteen, sixteen, and three.[3] She motivates the older two to go to school and takes care of her three-year-old. She spends time doing things with her mother and sister. She goes shopping, runs errands, takes her daughter to the park and does activities with her. She goes to children's sporting events and has a Y membership that she has used a few times. She also takes her dog to the park.

Id. The ALJ also noted that Sidney W. independently manages her own household and finances, helps the older children with online school,[4] takes them to appointments, attends sporting events, babysits her cousin's child, goes out with her sister, goes shopping and camping with family, and interacts with dating prospects. Id. at p. 17.

---

[3] This was the children's ages as of June 2020. (AR 46, 49).
[4] The evidence supports Sidney W. helped her children with online school during the COVID-19 pandemic, not that she voluntarily homeschooled her children.

Second, the ALJ considered Sidney W.'s medical conditions, specifically that she "is obese, has carpal tunnel syndrome and struggles with bipolar disorder." Id. at p. 16. The ALJ found that the medical evidence did not support the level of functional compromise purported by Sidney W., as "she walks with a normal gait, has normal strength and sensation in her extremities, with exception to slightly decreased sensation in the median n[erve] distribution bilaterally (associated with carpal tunnel syndrome). She has no other focal neurological, sensory, or motor deficits. She has no noted deficits with range of motion, no noted back, joint, or musculoskeletal pain complaints or tenderness, and cardiovascular and pulmonary examination findings are normal." Id. at pp. 16-17.

Third, the ALJ considered Sidney W.'s mental health, including aggravating factors. Id. at p. 17. The AJL noted that while Sidney W., at times, reports "feeling down or irritable with low frustration tolerance and lack of motivation," these periods often coincide with Sidney W. not taking her medication, regularly drinking alcohol, or having increased stress associated with family issues. Id. at pp. 17, 393.

Furthermore, the ALJ considered objective medical evidence noting that "examinations reveal her mood is pretty even, alright, good, or euthymic. She has appropriate grooming and hygiene, maintains good eye contact, is friendly and cooperative with no psychomotor agitation or retardation. Her speech is normal. She is alert and oriented. Thought processes are logical, sequential, and goal directed, with no abnormalities of thought content, intact cognition,

no trouble with concentration or attention, and good fund of knowledge, insight, and judgment." Id. at p. 17.

Weighing the Polaski factors,[5] the ALJ determined, "the claimant's conditions would cause limitations in her ability to perform some work-related activities;" however, "the evidence, overall, including the objective findings, and the claimant's activities, do not support limitations beyond those set forth in the residual functional capacity." Id. at p. 17.  The ALJ primarily relied on the fact that Sidney W.'s daily activities, demonstrated via Sidney W.'s testimony, was inconsistent with her allegations of disability. Id. at pp. 43-56, 17.  The ALJ found Sidney W.'s ability to engage in such activities supported the RFC that she can perform light work. Id. at p. 17.

Sidney W. argues her ability to "care for her three children and do some limited activities on her good days does not correlate to the ability to perform work in the competitive and stressful conditions in which real people work in the real world." (Doc. 13, p. 11).  Sidney W. further argues, relying on Nowling v. Colvin, 813 F.3d 1110 (8th Cir. 2016), that the ALJ's decision does not take

---

[5] The ALJ failed to discuss Sidney W.'s work history; however, that is not an error that calls for reversal.  See Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987) (holding that although the ALJ's opinion did not discuss the plaintiff's work history in detail, "this does not entitle the District Court to undertake this consideration for itself—to engage in fact-finding in a social-security case is not within the province of a federal court.  An arguable deficiency in opinion-writing technique is not a sufficient reason for setting aside an administrative finding where, as here, the deficiency probably had no practical effect on the outcome of the case.  Our feeling that this error, if there was one, is not significant is bolstered by the fact that claimant's brief in this Court does not argue that the ALJ's finding should be reversed because his opinion did not adequately discuss the claimant's work history.").

into account the effects of Sidney W.'s highly structured life and her inability to function outside of those settings. Id. at p. 10; see 20 C.F.R. § pt. 404, subpt. P, app. 1 (holding the ALJ must consider the effects of "structured setting" when drawing conclusions about a person's ability to work from looking at their daily activities).

Sidney W. claims she lives in a highly structured environment, due to the help from her sister and her mom, which allow her to function "at her own pace." (Doc. 13, p. 11). However, the ALJ relied on Sidney W.'s testimony regarding her daily activities, including Sidney W.'s testimony that even on her bad days she is able to maintain care for her 3-year-old child and a puppy. (AR 46, 48). The ALJ found that Sidney W.'s life does not provide a "structured setting" as she is the caretaker for her three children, including a son with ADHD and extreme behavior issues, evidenced by the fact she filed a child in need of supervision petition with the court, and a daughter who has been suicidal and was previously admitted to a psych unit. Id. at pp. 474, 903.

Sidney W. argues that her case is no different than Stickler, where this Court held that the ALJ erred by rejecting Stickler's credibility because "the ability to do activities such as light housework and visiting with friends provides little or no support for the finding that a Claimant can perform full time competitive work." Stickler v. Colvin, 173 F. Supp. 3d 925, 942 (D.S.D. 2016) (omitting internal citations). However, Sidney W. reported abilities far exceed what Stickler was able to do. For example, Stickler reported being unable to do household activities such as laundry or shopping without

12

assistance; whereas, Sidney W. is able to maintain her household, including raising three children, without much help, evidenced by Sidney W.'s testimony. Furthermore, in Stickler, the vocational specialist believed he could not perform any jobs; while the vocational specialist in Sidney W.'s case believed there was numerous jobs in the national economy Sidney W. could perform.

Finally, even if there was enough evidence to support a finding of substantial evidence to support Sidney W.'s claim of disability, that does not override the significant amount of medical evidence to support a finding of her not being disabled. Steed v Astrue, 524 F.3d 872 (8th Cir. 2008) (illustrating the "importance of our standard of review in social security disability cases. While there is a significant amount of medical evidence in the record, it appears that substantial evidence would support both the ALJ's conclusion that Steed was not credible, and Steed's argument to the contrary. However, the ALJ was able to observe Steed during her testimony at the hearing, and this, in addition to the voluminous medical evidence, convinced the ALJ that she was not fully credible and could perform light work. The ALJ is in the best position to make this determination, Ramirez v. Barnhart, 292 F.3d 576, 581 (8th Cir. 2002), and we cannot say the ALJ erred in doing so.")

Based on the ALJ's evaluation of Sidney W.'s daily activities, the objective medical evidence, and other inconsistencies in the record as a whole, this court will not disturb the ALJ's decision to discredit the intensity, frequency, and duration of Sidney W.'s subjective complaints. See Juszczyk v. Astrue, 542 F.3d 626, 632 (8th Cir. 2008) (deferring to the ALJ's credibility determination

where the objective medical evidence did not support the claimant's testimony as to the depth and severity of his physical impairments). Because the ALJ gave good reasons for rejecting Sidney W.'s credibility, the court will defer to that judgement. Hogan, 239 F.3d at 962.

### 2. The ALJ did not err in rejecting Dr. Haas' opinions

Sidney W. argues the ALJ improperly rejected Dr. Christopher Haas' opinions, specifically two statements he authored. (Doc. 13, p. 16). The Commissioner disagrees. (Doc. 15).

Although ALJs are no longer[6] directed to afford controlling weight to treating source opinions, the regulations still recognize the "foundational nature" of the observations of treating sources. Barrett v. Berryhill, 906 F.3d 340, 343 (5th Cir. 2018). The regulations suggest that treating source opinions will often be given greater weight because "the examining relationship provides them with a better understanding of an applicant's condition." Id. (citing 20 C.F.R. § 404.1520c(c)(3)(v) ("A medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder.")).

The ALJ must "evaluate the persuasiveness of medical opinions by considering (1) whether they are supported by objective medical evidence, (2) whether they are consistent with other medical sources, (3) the relationship that the source has with the claimant, (4) the source's specialization, and

---

[6] Because Sidney W.'s social security claim was filed after March 27, 2017, the new rules of 20 C.F.R. § 404.1520c regarding the consideration of medical opinions apply.

(5) any other relevant factors." Bowers v. Kijakazi, 40 F.4th 872, 875 (8th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)). "The first two factors—supportability and consistency—are the most important." Id. (citing 20 C.F.R. § 404.1520c(a)). Under the revised regulations, "treating physicians are [no longer] entitled to special deference." Id. (citing 20 C.F.R. § 404.1520c(a)); Kraus v. Saul, 988 F.3d 1019, 1026 (8th Cir. 2021) (a "treating physician's opinion deserves no greater respect than any other physician's opinion when the treating physician's opinion consists of nothing more than vague, conclusory statements")).

"A treating physician's assessments 'possess little evidentiary value' when they 'consist of nothing more than vague, conclusory statements,' such as 'checked boxes, circled answers, and brief fill-in-the-blank responses." Hilliard v. Saul, 964 F.3d 759, 762 (8th Cir. 2020) (quoting Thomas v. Berryhill, 881 F.3d 672, 675 (8th Cir. 2018)); see Holmstrom v. Massanari, 270 F.3d 715, 721 (8th Cir. 2001) ("[T]he checklist format, generality, and incompleteness of the assessments limit their evidentiary value."); Wildman v. Astrue, 596 F.3d 959, 964 (8th Cir. 2010) (affirming ALJ's discounting a physician's checkbox opinion because it cited no medical evidence and provided little to no support for its conclusions). However, even when a checkbox or conclusory medical source opinion does not provide extensive explanations, the ALJ is required to view the medical source opinion in the context of the claimant's medical record. Despain v. Berryhill, 926 F.3d 1024, 1028 (8th Cir. 2019) (citing Cox v. Barnhart, 345 F.3d 606, 609 (8th Cir.

15

2003)); Phillips v. Saul, 2020 WL 3451519, at *3 (E.D. Ark. 2020) (applying Despain to a medical source opinion evaluated according to § 404.1520c).

Dr. Haas is a psychiatrist at Fort Meade Veteran's Medical Center who met with Sidney W. on numerous occasions. (Doc. 8, p. 2). Dr. Haas authored three statements in which he opined that Sidney W. faces difficulty in leaving her home. (AR 461, 665-67, 916). The ALJ did not find these statements to be persuasive. Id. at p. 17.

First, on August 23, 2016, Dr. Haas wrote a letter stating "Ms. W. is in psychiatric treatment with me for Bipolar II Disorder. Ms. W. was seen by me today for a psychiatric follow-up medication management appointment at 8:00 a.m. Ms. W.'s psychiatric disorder results in episodes of depressed mood and anxiety that at times may result in her having to call in sick to work. Thank you for your consideration in this matter." Id. at p. 916. The ALJ did not find this statement to be persuasive as this visit was made two years prior to Sidney W.'s alleged onset date of her disability. Id. at p. 17. The ALJ noted that after this assessment, Sidney W. continued to work, earning SGA for two more years, with no evidence that work accommodations were made. Id. at p. 18. Furthermore, the AJL noted that at the time the statement was written, the claimant had not seen this provider for a year and had stopped taking her medicine. Id. Additionally, the ALJ found that Dr. Haas' statement of Sidney W. missing work was vague with regard to how often this may occur, nor consistent with objective evidence, which demonstrates that the claimant has some down moods, irritability, or frustration, at times, but most often her

16

mood is pretty even, alright, good, or euthymic, and with, otherwise, normal mental status examinations.  Id.

Second, Dr. Haas authored a letter on January 8, 2019, written to whom it may concern stating that "Sidney W. ['] psychiatric disorder causes her to experience depressive and hypomanic episodes.  At times during these episodes Sidney W. experiences low energy, lack of motivation, and anhedonia which make it difficult for her to leave the home."  Id. at p. 461.  The ALJ found Dr. Haas' statements to be contradicted by Sidney W.'s "reported activities, including going camping, shopping, taking her daughter to the park, attending children's sporting events, taking her children to appointments, and attending her own appointments, going 'out' with her sister, going to the YMCA to exercise, and to Sturgis demonstrate she does leave her home for a variety of reasons, when she wants to."  Id. at p. 18.  Furthermore, the ALJ noted that Dr. Haas provided no information as to how often this may occur nor any specific functional limitations.  Id.

Third, on July 30, 2020, Dr. Haas authored a Medical Source Statement of Ability to do Work Related Activities (mental).  Id. at pp. 665-667.  Dr. Haas opined Sidney W. would have a marked restriction in her ability to respond appropriately to usual work situations and to changes in a routine work setting.  Id. at p. 666.  Dr. Haas explained, "the patient has interacted appropriately with this provider and clinic staff during her appointments.  Rotating work shifts would likely have a negative impact on her psychiatric health as it could disrupt sleep leading to manic or depressive episodes."  He

17

continued, "at times depressive and manic episodes have made it difficult for this patient to go to work. Patient is currently taking medications to stabilize her mood." Id.

The ALJ did not find Dr. Haas's July 30, 2020, Medical Opinion to be supported by objective medical evidence. Id. at pp. 18-19. The ALJ stated there is "no objective evidence of any problems with understanding, remembering, or applying information," Sidney W. "is cognitively intact," and "there is no evidence of problems with memory or recall." Id. The ALJ found "the claimant does have some exacerbation of symptoms, but the evidence does not show that her symptoms, even during exacerbations, impact her capacity to understand, remember, or apply information beyond a mild level." Id. Further, the ALJ stated, "[t]here is no evidence of the claimant having psychomotor retardation, as Dr. Haas, indicates. In fact, examinations consistently indicated the opposite, noting no psychomotor retardation (or agitation), which is contradictory to the level of severity of symptomology Dr. Hass purports (AR 403, 470, 507, 510, 514, 516, 522, 597, 602, 620, 626, 637-38, 645-55, 654, 673, 813, 821-22, 835, 841, 851)."[7] Id. at p. 19. The ALJ, after evaluating Sidney W.'s daily activities, stated that her "life seems, anything, but routine." Id. Finally, the ALJ stated Sidney W.'s daily activities contradicts Dr. Haas's opinion. Id.

---

[7] The court modified the ALJ's citation to match the AR record.

The court finds the ALJ's decision to disregard Dr. Haas's opinions to be supported by substantial evidence on the record as a whole. Choate, 457 F.3d at 869.

The ALJ considered whether Dr. Haas's opinions were consistent with other medical sources. Sidney W. was evaluated by two non-examining State agency psychologists, Eleni Muntz, PhD, in November of 2018, and Jerry Buchkoski, PhD, in November of 2019. Id. at p. 19. The ALJ found the opinions of Dr. Muntz and Dr. Buchkoski to be partially persuasive, specifically that Sidney W. "gets down, lacks motivation, and is irritable, at times, but with medications, her mood is okay and examination findings reveal normal . . . functioning, with her being cooperative and friendly." Id. The ALJ noted the opinions are also consistent with Sidney W.'s activities, such as managing her own medications, taking care of her three children and a pet, managing appointments of the children, cooking, doing household chores, drives, goes shopping, babysits for her cousin's child, participates in social activities such as camping, attending sporting events, going out with her sister, going shopping, going to the park and to the YMCA, and interacts with dating prospects. Id. The ALJ found the evidence supports no more than moderate limitations for Sidney W., which was consistent with the opinions of the consulting physicians. Id. For these reasons the ALJ did not improperly reject Dr. Haas's opinions.

While Sidney W. argues the ALJ's finding that the record is absent of any emergency room visit or hospitalization "one would expect" is evidence of the

19

ALJ improperly substituting her own lay opinions for those of a medical expert; any such error is harmful error. An error is harmless if there is no indication that the ALJ would have reached a different decision without the alleged error. See Byes v. Astrue, 687 F.3d 913, 917 (8th Cir. 2012) (citing Van Vickle, 539 F.3d at 830).

It is not the court's role to re-weigh the evidence and, even if the court would decide the case differently, it cannot reverse the ALJ's decision if the decision is supported by good reason and is based on substantial evidence. Guilliams, 393 F.3d at 801. Without restating the evidence of the record above, the court finds that the ALJ's decision in this case is based on substantial evidence and is supported by good reason.

## ORDER

Based on the above analysis, it is hereby

ORDERED that claimant's motion to reverse the decision of the Commissioner (Doc. 13) is denied.

IT IS FURTHER ORDERED that Commissioner's motion to affirm the decision of the Commission (Doc. 14) is affirmed.

DATED this 27th day of March 2023.

BY THE COURT:

_____
DANETA WOLLMANN
United States Magistrate Judge